IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,
        Plaintiff,

*vs*.                                                                    CRIMINAL ACTION NO. 1:10CR105

JOHNNY BEASON,
        Defendant.

## REPORT AND RECOMMENDATION/OPINION

On the 14th day of January 2011, came the defendant, Johnny Beason, in person and by Brian J. Kornbrath, his attorney, and also came the United States by its Assistant United States Attorney, Brandon S. Flower, for a hearing on Defendant's Motion to Dismiss, which motion was filed on December 20, 2010 (Docket Entry 15). The United States filed its Response to the Motion on January 3, 2011 (Docket Entry 17). Defendant filed a Reply on January 4, 2011 (Docket Entry 18). The United States filed a Supplemental Response on January 13, 2011 (Docket Entry 22). The matter was referred to the undersigned United States Magistrate Judge on December 21, 2010, by United States District Judge Irene M. Keeley (Docket Entry 16).

### I. Procedural History

On November 23, 2010, an Information was filed against Defendant, charging him with being an inmate in the custody of the Bureau of Prisons at the Federal Correctional Institution of Morgantown, and knowingly possessing a prohibited object that threatened the order, discipline, or security of said institution, to wit, a cellular telephone, in violation of Title 18, United States Code, Sections 1791(a)(2) and (b)(5). Defendant was arraigned on November 29, 2010. The motion before the Court was filed on December 20, 2010. Trial is scheduled for February 7, 2011.

## II. Contentions of the Parties

Defendant moves the Court, pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure, to dismiss the Information as violating the constitutional "void for vagueness" doctrine.

The Government contends the vagueness challenge fails when one considers the statute as applied to the federal prison setting at FCI Morgantown; when FCI Morgantown allegedly gave notice that cellular phones are contraband, and in light of much media coverage of the problem of prisoners possessing cellular telephones.

## III. Statement of Facts

The Court received the testimony of two witnesses under oath, to wit: Lieutenant Ken Montgomery who is the Special Investigative Supervisor at FCI Morgantown, and of Defendant, Johnny Beason. The Court also received Government Exhibits 1, 2, and 3. The relevant facts of this case are not in dispute.

1) As of May 20, 2010, Defendant was a federal inmate in the custody of the Bureau of Prisons at FCI Morgantown in Morgantown, West Virginia.

2) He had been there for about one year at the time the incident that brings him before the Court occurred.

3) Defendant was provided with the Admission & Orientation Handbook for FCI Morgantown 2009 when he entered the prison [Government Exhibit 1].

5) The Handbook provides[1]:

---

[1] The undersigned notes that the handbook attached to the United States' brief, which expressly prohibited cellular phones, was effective only after Defendant was discovered with the cellular phone. The AUSA provided the Court a copy of the handbook actually in effect during the relevant time, in which the words cellular phone or mobile phone do not appear.

The Bureau of Prisons (BOP) Trust Fund Limited Inmate Communications Systems (TRULINCS) provides communication capabilities and other services beneficial to inmates. This program is intended to improve the ability of inmates to efficiently and economically maintain contact with persons in the community. The TRULINCS program provides an inmate with electronic communication system which does not jeopardize the safety, security, or orderly operation of the correctional facility, or the protection of the public . . . . Inmates participating in this program do not have access to the Internet [emphasis added].

Under the heading **TELEPHONE CALLS**, the handbook further provides:

Each housing unit is equipped with telephones so inmates can place calls to family members and friends. Family members and friend must be posted to your Trust Fund Limited Inmate Communications System's (TRULINCS) contact list . . . .

Telephone use is a privilege afforded to inmates who demonstrate a willingness to abide by the rules governing telephone use. Improper use of the telephone, including making multi-person calls, third-party calls, call-forwarding, three-way calls or credit card calls can result in loss of the telephone privilege or restricted use of the telephone privilege or restricted use of the telephone as disciplinary sanctions. All inmate telephone calls are subject to monitoring. Unmonitored legal calls may be arranged through unit staff in accordance with Bureau policy and local procedures... Inmates are only permitted to place telephone calls outside of their scheduled work hours, program activity time periods, and count times. Telephones are operational during non-programming and non-work hours . . . . [emphasis added].

Under the heading **PERSONAL PROPERTY**, the handbook states:

It is the policy of the Bureau of Prisons that inmates may possess only such property as is authorized for retention upon admission to the institution, issued for use while in custody, purchased in the commissary or approved by staff to be mailed to or otherwise received by inmates.

Under the heading **CONTRABAND**, the handbook states:

Contraband is defined as any item or thing not authorized or issued by the institution, received through approved channels, or purchased through the commissary. Any item in an inmate's personal possession must be authorized, and a record of the receipt of the item must be kept in the inmate's possession . . . .

Under the heading **PROHIBITED ACTS and Disciplinary Severity Scale**, the handbook prohibits, among others code sections:

108     Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade).

6) Lieutenant Montgomery testified notice was made available to inmates that cell phones were prohibited and possession would be prosecuted and that at an A&O briefing every week he said: "if you have a cell phone, you will be prosecuted."

7) He also testified that all inmates knew that if they possessed a cell phone they could be charged with a code 108–possession of a hazardous tool.

8) Lieutenant Montgomery was unable to say what Defendant knew.

9) Defendant testified that he had no notice he would be criminally prosecuted for possession of a cell phone.

10) Defendant testified he knew he could not possess a cell phone and could be punished administratively under the handbook.

11) Defendant testified that he knew possession of a cell phone could be a code 108, 197, and possibly a 199 violation. Code 108 has already been quoted. Code 197 refers to use of the telephone to further criminal activity, and 199 refers to "Conduct which disrupts or interferes with the security or orderly running of the institution of the Bureau of Prisons. (Conduct must be of the Greatest Severity in nature)."

12) On May 20, 2010 prison staff observed Defendant holding a cellular phone up to his ear.

13) Defendant had earlier obtained the cellular phone in order to remain in contact with friends and relatives without having to use the costly telephones provided by the BOP.

14) Defendant did nothing with the cellular telephone that ever threatened the order,

discipline or security of FCI Morgantown.

15) There is no evidence showing Defendant used the cellular phone for any criminal enterprises.

16) Knowing that a change in the law was working its way through Congress, Lieutenant Montgomery advised staff and posted progress reports on the pending legislation.

17) No modification of the language of the Handbook provided Defendant on admission to FCI Morgantown was made specifically naming a cellular phone as a prohibited object prior to the change in the Federal Statute.

12) Inmates were not specifically told that, because cellular phones were prohibited, they had a specified time frame within which to surrender any phone they possessed; or that, if they did not surrender their phone within the time frame allowed and were caught with it, they would be criminally prosecuted.

18) Lieutenant Montgomery testified that Defendant's case was the first case at FCI Morgantown referred for criminal prosecution.

19) Lieutenant Montgomery testified there are four other cases awaiting the resolution of the issue raised in this case before possibly being referred for criminal prosecution.

20) Lieutenant Montgomery testified Staff had confiscated 35-40 cell phones in the past year, but he had decided to refer for prosecution only the cases in which it was determined the inmate was using the cell phone, not just in possession of the cell phone.

21) According to Lieutenant Montgomery, since the referrals were made, the incidence of cell phone possession at FCI Morgantown had dropped.

As a threshold matter, the undersigned United States Magistrate finds the purpose of

possessing and using the cellular phone is not relevant to the legal issue, which is whether the statute under which Defendant is charged by the United States is void for vagueness as applied to the facts.

## IV. DISCUSSION

The undersigned notes this is a case of first impression in this District notwithstanding FCI Morgantown has been in existence for more than a decade and notwithstanding cellular phones have been in existence for more than a decade.[2]

It is not disputed that 1791(a)(2) pertains to providing or possessing contraband in prison, and provides in pertinent part:

> Whoever . . . being an inmate of a prison, makes, possesses, or obtains . . . a prohibited object[,] shall be punished a provided in subsection (b) of this section.

1791(d)(1), as it stood in May 2010, at the time Defendant was found to possess the cellular phone, provided the definition of "prohibited object," as follows:

(1) the term "prohibited object" means –

> (A) a firearm or destructive device or a controlled substance in schedule I or II, other than marijuana or a controlled substance referred to in subparagraph (C) of this subsection;
>
> (B) marijuana or a controlled substance in schedule III, other than a controlled substance referred to in subparagraph (C) of this subsection, ammunition, a weapon (other than a firearm or destructive device), or an object that is designed or intended to be used as a weapon or to facilitate escape from a prison;
>
> (C) a narcotic drug, methamphetamine, its salts, isomers, and salts of

---

[2]The United States provided a copy of an information and J&C resulting from a prosecution in the United States Court for the Southern District of West Virginia. [Government Exhibit 3]. There was no objection. The documentation is of no precedential value. The documentation is void of information that the same void for vagueness argument was raised in the SD case as is being raised in this case. To the extent it shows the United States prosecuted another inmate in another district for possession of a cell phone, that fact is noted.

>   its isomers, lysergic acid diethylamide, or phencyclidine;
>
>   (D) a controlled substance (other than a controlled substance referred to in subparagraph (A), (B) or (C) of this subsection) or an alcoholic beverage;
>
>   (E) any United States of foreign currency; and
>
>   (F) any other object that threatens the order, discipline, or security of a prison, or the life, health, or safety of an individual.

It is undisputed that a cellular phone is not defined expressly as a "prohibited object" in this statute.

The United States therefore charged Defendant under 1791(d)(1)(F), also called the "catchall provision," contending a cellular phone is an "other object that threatens the order, discipline, or security of a prison, or the life, health, or safety of an individual."

The Fourth Circuit holds:

> A statute is impermissibly vague if it either (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or (2) "authorizes or even encourages arbitrary and discriminatory enforcement."

U.S. v. Whorley, 550 F.3d 326 (4th Cir. 2008) (citing Giovani Carandola, Ltd. v. Fox, 470 F.3d 1074 (4th Cir. 2006)).

> Stated differently, a court considering a vagueness challenge must determine if the statutory prohibitions "are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with."

Id. (citing Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). Finally:

> A statute need not spell out every possible factual scenario with "celestial precision" to avoid being struck down on vagueness grounds.

Id. (citing Vernon Beigay, Inc. v. Traxler, 790 F.2d 1088(4th Cir. 1986).

> [V]agueness challenges to statutes which do not involve First Amendment freedoms

must be examined in the light of the facts of the case at hand.

U.S. v. Williams, 364 F.3d 556 (4th Cir. 2004).

Clouding the issue in this case is the fact that, on August 10, 2010, <u>after</u> the incident which brings Defendant before this Court, President Obama signed into law the Cell Phone Contraband Act of 2010, which amended section 1791 by expressly adding phones as 1791(d)(1)(F) and making the former (d)(1)(F) "catchall provision" (G). As of August 10, 2010, 1791(d)(1)(F) defines as a prohibited object "a phone or other device used by a user of commercial mobile service . . . in connection with such service."

PL 111-225, the "Cell phone Contraband Act of 2010), begins as follows:

> An Act To amend title 18, United States Code, to prohibit the possession or use of cell phones and similar wireless devices by Federal Prisoners.

In introducing the Senate Bill in 2009, Senator Feinstein further clouded the issue pending before this Court by stating:

> Mr. President, today I am pleased to introduce the Cell Phone Contraband Act of 2009. This bill would close a **loophole** that currently exists in Federal law by prohibiting the possession of cell phones and other wireless devices by prisoners in Federal Facilities.
>
> **Currently, cell phones found in prisons are not specifically defined as contraband material.** As a result, guards and inmates found smuggling or in possession of a cell phone in a Federal prison **are rarely punished**.
>
> This bill **would close this loophole** by defining cell phones as contraband material under Federal law. As a result, **any person smuggling or in possession of a cell phone could potentially serve up to a year in prison.**[3] [emphasis added].

The Congressional Budget Office stated:

> S. 1749 would prohibit the possession of cell phones or similar wireless devices by

---

[3] http://thomas.loc.gov/cgi-bin/query/D?r111:2:./temp/~r1118bj5Rb::

8

federal prisoners (use of cell phones by prisoners is currently banned in the federal correctional system). **Because the bill would establish a new crime**, the government might be able to pursue cases that it otherwise would not be able to prosecute. [emphasis added].

Unfortunately, the undersigned was unable to find any Fourth Circuit case law which addresses the issue as presented by Defendant's conduct prior to the August 2010 change in the statutory law.

The undersigned reviewed U.S. v. Chatman, a Fourth Circuit case on appeal from the Northern District of West Virginia, because it is somewhat instructive with respect to the Court's view that prisons present unique situations. See 538 F2d 567 (4th Cir. 1976). As Defendant correctly argues, Chatman was decided under an older and very different version of 1791. The statute in existence at the time of the Chatman case provided:

> Whoever, contrary to any rule or regulation promulgated by the Attorney General, introduces or attempts to introduce into or upon the ground of any Federal penal or correctional institution or takes or attempts to take or send therefore anything whatsoever, shall be imprisoned for not more than ten (10) years.

In Chatman, the District Court and the Fourth Circuit found that the statute made very clear that it addressed "anything whatsoever." The reasoning of the court, however, is what the undersigned finds instructive:

> Were the statute in question here an ordinary criminal statute we might feel constrained to hold that it runs afoul of the well-established void-for-vagueness doctrine. In this case, however, we must construe the statute while bearing in mind **the unique environment in which it is designed to operate. A federal penal institution has peculiar needs, and statutes designed to regulate articles being introduced into such institutions must be scrutinized in light of those needs . . . .** Pragmatically speaking, it would be **virtually impossible for a single statute to catalogue the numerous items which must be prohibited in the interest of prison safety and security.** Accordingly, we hold that s 1791 is not unduly vague or overbroad **when viewed in the context of the highly distinctive prison milieu**.

9

Id. at 569 (internal citations omitted)[emphasis added].

It must be noted that after Chatman 1791 was amended and the amendment sought to itemize some prohibited items (A through E) and used the (F) "catch all" provision to prohibit "any other object that threatens the order, discipline, or security of a prison, or the life, health, or safety of an individual."

The Third Circuit cited Chatman in a case specifically involving a cellular phone. In United States v. Blake, 288 Fed. Appx.791 (3rd Cir. 2008)(unpublished), the defendant contended that because of section 1791's ambiguous "catchall" provision, he was "never on notice . . . that he was subject to any rules or regulations of the Federal government regarding possession of a cell phone or cell phone charger." The Blake court first noted a number of media outlets that had reported on the danger of cell phones in prisons, and then found:

> That cell phones can, and have been, used for various dangerous and unlawful purposes in the prison context is, thus, quite clear. Given these readily apparent dangerous uses, made even more conspicuous by the media's coverage of this very issue, the ordinary person would know that an inmate's possession of a cell phone would "threaten the order, discipline, or security of a prison, or the life, health or safety of an individual.

Id. at 795. The court continued:

> As to the enforcement component of the vagueness inquiry, as Blake has attacked the statute only as applied to his conduct (rather than facially), this inquiry is also informed by the facts of this case. There may very well be a situation that raises serious vagueness concerns from an enforcement perspective. But applied to the possession of a cell phone and charger, objects an ordinary person would know he or she could not possess in jail, there is not a sufficient level of concern regarding the level of discretion given to police to render this statute unconstitutional.

Id. at 795.

In Blake there was a prison regulation noted in the handbook available to him which gave

10

him notice that possession of a cellular phone was prohibited a prohibited object.

The United States submitted additional cites to cases in which Code 108 was held to apply to cellular phones and gave inmates notice that cell phones were hazardous tools under that code section. See Robinson v. Warden, FCI Fort Dix, 250 Fed.App.462 (3rd Cir. 2007):

> We also reject, as did the District Court, the argument that Code 108 is void for vagueness, and that a cell phone is not a hazardous tool. A statute or regulation must fail for vagueness if it "forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning."
> ***Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)***. Prohibited acts under BOP regulations include Code 108, entitled "Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade)." **28 C.F.R § 541.13**, Table 3. Code 108 is not unconstitutionally vague on its face. Moreover, Robinson does not dispute that inmates at Fort Dix received notice well before he was charged with this misconduct that cell phones would be considered hazardous tools because of their hazardous potential. The BOP's definition of a hazardous tool to include a cell phone is not plainly erroneous or inconsistent with BOP regulations, *see **Chong v. Dist. Dir., I.N.S., 264 F.3d 378, 389 (3d Cir.2001)***, and Robinson's conduct clearly falls within Code 108;

Hicks v. Yost, 377 Fed.App.223 (3rd Cir. 2010):

> Code 108 prohibits "[p]ossession, manufacture, or introduction of a hazardous tool ( [t]ools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade)."
> 28 C.F.R. § 541.13 tbl. 3. In an October 2006 memorandum to the FCI-Loretto inmate population,[FN2] Warden Yost stated that "[i]nmates in possession of cell phones pose a serious threat to the security and orderly running of the institution," and that "any inmate found in possession of an electronic communication device or related equipment ... may be charged with a violation of Code 108...."
>
> According to Appellees, Hicks has been incarcerated at FCI-Loretto since March 2005.
>
> Contrary to what Hicks appears to argue, the absence of the term "cell phone" in the text of Code 108 did not prevent the *225 BOP from interpreting that provision to

11

include this item. Moreover, Hicks has not shown that the BOP's interpretation of Code 108 is plainly erroneous or inconsistent with that provision. *See Chong v. Dist. Dir., INS,* 264 F.3d 378, 389 (3d Cir.2001) ( "An agency's interpretation of its own regulation is 'controlling ... unless it is plainly erroneous or inconsistent with the regulation.' " (quoting *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945)));

Reid v. Adams, 2006 WL 1966997 (E.D.Va. 2006):

> A review of the hearing decision reveals that while the cellular telephone was not included on the receipt, it was found in the bag along with the receipt tracked to Ms. Hill. Therefore, there is "some evidence" to link the cellular phone to Ms. Hill, who in turn was a visitor of Reid. Further, the hearing officer explained his reasons for finding the cellular telephone is a "hazardous tool ." He stated,
>
> *5 [a] cellular telephone is extremely useful in effecting an escape or other absence from an open institution or coordinating the introduction into the facility of illegal substances, i.e., drugs. Cellular telephones, used in concert, could be used to coordinate inmate criminal, sexual or other violent acts within the institution. Therefore, the DHO finds a cellular telephone is a hazardous tool.
>
> *See* Respondent's Memo Ex. B Attachment 1 p. 3. The DHO has adequately explained his reasons for finding the cellular telephone is a hazardous tool.;

Eason v. Owen, 2010 WL 3192920 (D.S.C. 2010):

> A cell phone is defined as a hazardous tool not only for its potential to aid in an escape, but also because it may be "hazardous to institutional security." *See* 28 C.F.R. 13, Table 3, Code 108. Possession of a cell phone can undermine institutional security because the inmate can avoid the telephone monitoring requirement facilitating the introduction of contraband, such as drugs, into the institution.

Hudson v. Zickafoose, 2010 WL 4746220 (D.N.J. 2010):

> Petitioner asserted that he had no notice as to the fact that possession of illegal cell phone was a disciplinary infraction of "greatest severity," and-therefore-he should have been charged and sanctioned for committing only a "moderate" violation (under the BOP Code 305) rather than for a violation of "greatest severity." *See id.* Petitioner's position is equally without merit as to his assertion that he knew he was committing a disciplinary violation but-without knowing the particular sanction he would be facing if his infraction were detected-he was prevented from determining whether his decision to commit the infraction would be "worthy," to him, of the sanctions that he might suffer. While Petitioner has due process rights to notice as to

general categories of the acts prohibited, he has no due process right to notice as to any specific administrative sanction he might face if his violation gets detected . Adams v. Gunnell, 729 F.2d 362, 368-70 (5th Cir.1984) (a prisoner's right to notice means that the rules must give a person of ordinary intelligence notice of the actions prohibited); *accord* Cook v. Warden, 241 Fed. App'x 828, 2007 U.S.App. LEXIS 14772 (3d Cir.) ( *per curiam* ) (dismissing the inmate's § 2241 challenges to vagueness of a BOP's Code and finding that the notice was sufficient where the inmate was provided with a prison handbook informing him of the categories of acts proscribed, even though different prison handbooks detailed the proscribed activities with different degree of particularity), *cert. denied* 552 U.S. 1051, 128 S.Ct. 677, --- L.Ed.2d ---- (2007); Cotten v. Ward, 190 Fed. App'x 701, 702 (10th Cir.2006) (affirming dismissal of § 2241 challenges where the prison rule was "sufficiently clear and unambiguous to provide fair notice to inmates of what conduct [was] prohibited"); *see also* Eason v. Owen, 2010 U.S. Dist. LEXIS 82153, at *6, 2010 WL 3192932 (D.S.C. Apr. 29, 2010) (dismissing an inmate's § 2241 challenges asserting that possession of a cell phone should be deemed a "lesser included offense" of Code 108 and, thus, subjected to a lesser sanction under another BOP Code). This is so because, unlike with regard to criminal statutes, no high degree of precision is required of disciplinary regulations, especially as to the sanctions entailed. *See* Meyers v. Alldredge, 492 F.2d 296, 310 (3d Cir.1974) ("[d]ue process undoubtedly requires certain minimal standards of specificity in prison regulations [but] the degree of specificity required of such regulations is [not] as that required of ... criminal sanctions"); Hadden v. Howard, 713 F.2d 1003, 1008 (3d Cir.1974) (administrative notice is generally deemed given "unless fair notice was clearly lacking"); *compare* United States v. Batchelder, 442 U.S. 114, 123, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979) (noting, in *dictum,* that "vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences" of the violation, but for the purposes of a criminal statute, not a disciplinary regulation). Here, Petitioner outright concedes that, at all pertinent times, he was on notice that possession of a cell phone was a proscribed offense and, moreover, a sanctionable misconduct. In addition, Petitioner concedes that, at all pertinent times, he was aware of the exact language of Code 108, which prohibits "[p]ossession ... of a hazardous tool [ *i.e.,* the] tools most likely to be used in an escape or escape attempt." *See* <> at 51 (FCCP "Inmate Information Handbook"); [FN7] *accord* Instant Matter, Docket Entry No. 1, at 8-9 (indicating that Petitioner was given a copy of the Handbook). Consequently, Petitioner was put on notice, by the very language of Code 108, that Code 108 sanctions could be applied to him for the misconduct of possession of a hazardous tool in the form of a cell phone. *See* Robinson v. Warden, 250 Fed. App'x 462 (3d Cir.2007) ( *per curiam* ) (rejecting the inmate's argument that Code 108 was too vague for the purposes of providing notice of the Code's applicability to cell phone infractions). Petitioner's allegations to that effect will, therefore, be dismissed. Finally, in the event Petitioner invites the Court to find abuse of discretion in the BOP's construction of Code 108 as covering the misconduct of cell phone possession,

13

the Court declines the invitation: federal courts have long established that the BOP's construction was reasonable. *See, e.g., Ausberry v. Grondolsky,* 2008 U.S. Dist. LEXIS 110521, 2008 WL 4225174 (D.N.J. Sept. 9, 2008) (where the BOP sanctioned an inmate with Code 108 loss of good-conduct credit upon analogizing the inmate's illegal MP3 player to a cell phone, the court rejected the inmate's lack-ofnotice challenges finding that the language of Code 108 provided sufficient notice as to the entire category of such electronic devices) (relying *Robinson* for the observation that the BOP's definition of a cell phone as hazardous tool within the meaning of Code 108 was neither plainly erroneous nor inconsistent with BOP regulations, and citing *Chong v. Dist. Dir.,* 264 F.3d 378, 389 (3d Cir.2001), for the umbrella proposition that the BOP's interpretation of its own regulation is "controlling ... unless it is plainly erroneous or inconsistent with the regulation"); *see also Eason,* 2010 U.S. Dist. LEXIS 82153, at *5-6, 2010 WL 3192932 ("[e]ven though Code 108 does not specifically include cell phones in the examples of hazardous tools, the BOP ... consistently viewed them as such because they 'permit an inmate to circumvent the telephone monitoring system, and may be used as a tool which coordinates or facilitates escape and the introduction of illicit materials or drugs' ") (relying on *Robinson* and the statement made by the BOP National Inmate Appeals Administrator Harrell Watts, and citing, *inter alia, Irvin v. Fed. Bureau of Prisons,* 2009 U.S. Dist. LEXIS 54103 (D.S.C.2009); *Marin v. Bauknecht,* 2007 U.S. Dist. LEXIS 83514, 2007 WL 3377152 (D.S.C.2007); *Rivera-Lind v. Pettiford,* 2006 U.S. Dist. LEXIS 76677, 2006 WL 2919069 (D.S.C.2006), and *Carey v. Williams,* 2006 U.S. Dist. LEXIS 77092, 2006 WL 2620351 (S.D.W.Va.2006)); *accord Hudson v. Edmonson,* 848 F.2d 682 (6th Cir.1988) (relying on *Hill* for the umbrella holding that selection of a particular disciplinary sanctions based on some evidence should not be second-guessed by the courts). Consequently, Petitioner's assertions that the BOP improperly construed its Code 108 as applicable to cell phones (that is, if such assertions were intended) are, too, without merit and will be dismissed.;

and Barnes v. Warden, FCI Texarkana, 2008 WL 3481942 (E.D. Tex. 2008):

> Petitioner states his disciplinary conviction should be overturned because a cell phone is not a hazardous tool as defined in the applicable regulation.
>
> The Bureau of Prisons' Program Statement 5270.07 defines a Code 108 offense as follows:
>
> Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g. hack-saw blade).
>
> It is evident that a cellular telephone could constitute a hazardous tool as it would permit inmates, whose telephone conversations are normally monitored, to

communicate with individuals outside the prison without being monitored. Obviously it would be easier to plan an escape or attempt to have contraband brought into the institution if an inmate could communicate with people outside the institution without fear of being monitored. As the official who denied petitioner's appeal at the regional level stated:

Your contention [that] the cellular telephone should not be considered a hazardous tool because you were not using it for criminal conduct is without merit. Use of a cellular telephone prevents staff from knowing the identity of the individual you are communicating with. Additionally, the possession of a cellular telephone is hazardous to institution security as it provides a means to threaten civilians, plan potential criminal acts, and plan an escape without the chance of staff monitoring the call. The possession of a cellular telephone merits the charge of Code 108.

Defendant Beason was given notice and testified he actually knew he could be charged administratively with possession of a hazardous tool or possibly with conduct which disrupts or interferes with the security or orderly running of the institution of the Bureau of Prisons. He argues, however, that he did not have notice that he could be charged with a federal crime for the conduct, because the handbook contains only administrative sanctions.

Notwithstanding that all of the aforementioned cases involved claims filed under 28 USC §2241 seeking relief from loss of good time for possession or use of a prohibited object, a cell phone, each of the cases clearly concluded for good reason that a cell phone constituted a hazardous tool within the meaning of Code 108.

The undersigned notes that none of the above cases and none of the prohibited acts listed in the handbook involved in this case discuss punishment other than administrative sanctions. None mention the possibility of criminal charges. Significantly, this includes among others, even a killing (Code 100); escape (Code102); or taking hostages (Code 107) which is listed immediately above Code 108. It is therefore clear to any reasonable person reading the handbook that administrative

15

actions are not the sole penalties available when an infraction is committed.

Defendant Beason's testimony that he knew he was not supposed to possess a cell phone is compelling. Such admission clearly shows that, in spite of the lack of specific mention of "cellular phone" in the handbook [Government Exhibit 1] or the Program Statement [Government Exhibit 2] or 18 U.S. C. §1791, Beason knew it was a violation to possess the cellular phone. Now, having been caught with the same and facing criminal prosecution, Beason is left with the same argument that was rejected in Hudson v. Zickafoose, *supra.*

Upon consideration of all of the above, and especially considering the context of a federal prison, the undersigned finds: 1) Defendant committed a prohibited act; 2) He had notice that the act was considered a code 108, which specifically prohibits possession of a hazardous tool; and 3) "people of ordinary intelligence [would have] a reasonable opportunity to understand" that a "hazardous tool" would come under the definition of "any other object that threatens the order, discipline, or security of a prison, or the life, health, or safety of an individual." U.S. v. Whorley, 550 F.3d 326 (4th Cir. 2008).

Defendant also argues that 1791(d)(1)(F) "authorizes or even encourages arbitrary and discriminatory enforcement." Id. In his case, it is an undisputed fact that, although 35-40 cell phones were discovered in the year before he was found in possession of a cell phone, his case was the first to be referred for criminal prosecution. Lt. Montgomery conceded that he had not referred any cases earlier, but found cell phone possession was becoming epidemic in the facility and decided to start referring them. He testified, however, that the reason he had referred only 5, was because he was only referring cases where the inmate was in actual possession of the phone and appeared to

be using it– in Defendant's case, he had it up to his ear when he was discovered.

The undersigned has already cited the Blake case from the Third Circuit, in which possession of a cell phone and charger was criminally prosecuted under the old 1791(d)(1)(F). The United States offered into evidence two Informations charging inmates held in federal facilities in the Southern District of West Virginia with possession of a cellular telephone under the former 1791(d)(1)(F). The evidence was submitted solely to show other such cases had been referred for criminal prosecution. The cell phone possession in those cases both took place about two weeks before Defendant's did. Both ended in Guilty Pleas.

In Blake, the Third Circuit addressed the issue as follows:

> As to the enforcement component of the vagueness inquiry, as Blake has attacked the statute only as applied to his conduct (rather than facially), this inquiry is also informed by the facts of this case. There may very well be a situation that raises serious vagueness concerns from an enforcement perspective. But applied to the possession of a cell phone and charger, objects an ordinary person would know he or she could not possess in jail, there is not a sufficient level of concern regarding the level of discretion given to police to render this statute unconstitutional.

United States v. Blake, 288 Fed. Appx. at 795.

The undersigned agrees with the court in Blake that "[t]here may very well be a situation that raises serious vagueness concerns from an enforcement perspective." The undersigned also finds, however, that this case is not one of them. Defendant knew he was prohibited from possessing a cellular phone. He knew he was in violation of Code 108, and he knew that Code 108 prohibited "hazardous tool[s]." He therefore knew (and, in fact, testified he knew) that a cellular phone was be a hazardous tool in a prison facility. The undersigned finally finds that 1791(d)(1)(F) is not unconstitutionally vague as regards possession of a hazardous tool "when viewed in the context of

17

the highly distinctive prison milieu." U.S. v. Chatman, 538 F2d at 569.

The undersigned United States Magistrate Judge therefore finds the statute is not void for vagueness and prosecution of the Defendant for possession of a cellular phone in prison is not the result of an arbitrary application of the law.

Accordingly, the undersigned recommends Defendant's Motion to Dismiss be denied.

## V. Recommendation

For the reasons herein stated, the undersigned accordingly respectfully recommends Defendant's Motion to Dismiss (Docket Entry 15) be **DENIED**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Proposed Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such proposed findings and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to

counsel of record.

    Respectfully submitted this 20th day of January, 2011.

                                  *John S. Kaull*
                                  JOHN S. KAULL
                                  UNITED STATES MAGISTRATE JUDGE